LAW OFFICES OF CHAIM J. WOOLF
Chaim J. Woolf (State Bar No. 236957)
Ronan Cohen (CASB No 167476)
2029 Century Park East, Ste. 1400
Los Angeles, California 90067
Tel: (310) 867-2729
Fax: (310) 919-3037

MARC R. GREENBERG, CASB No. 123115
marc.greenberg@kyl.com
KEESAL, YOUNG & LOGAN
A Professional Corporation
400 Oceangate, P.O. Box 1730
Long Beach, California 90801-1730
Telephone: (562) 436-2000
Facsimile: (562) 436-7416

Attorneys for Defendants,
YSN IMPORTS, INC., SAM NEWMAN
& ISRAEL SCHOCHET

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Guerrilla Air, Inc., Deborah Teramani, Dan Colby, and Mary Colby.<br><br>Plaintiffs,<br><br>v.<br><br>YSN Imports, Inc., Sam Newman, Israel Schochet, Alisa Schochet, and DOES 1-10., inclusive,<br><br>Defendants. | CASE NO. 2:11-CV-07413-SVW-RZ<br>[ASSIGNED TO THE HON. JUDGE STEPHEN V. WILSON]<br><br>**DEFENDANTS' MOTION FOR DIRECTED VERDICT PURSUANT TO F.R.C.P. 50(a); DECLARATION OF HANK KAHRS**<br><br>Trial Date: April 17, 2012 |

**DEFENDANTS' MOTION FOR DIRECTED VERDICT PURSANT TO F.R.C.P. 50(a)**
KYL_LB1495037

# I.

## EVEN WHEN THE PLAINTIFFS' EXPERT'S NUMBERS ARE APPLIED TO THE TERMS OF THE CONTRACT, THE PLAINTIFFS WERE STILL OVERPAID

Defendant YSN Imports, Inc, ("YSN") hereby move for judgment as a matter of law on Plaintiff Guerilla Air's, Inc.'s, ("GAI") breach of contact claim pursuant to Federal Rules of Civil Procedure, Rule 50(a). This motion is made on the grounds that GAI's declarations do not meet the burden of proof necessary to make a prima facie case on the breach of contract cause of action in the Second Amended Complaint.

The Court now has the sum total of GAI's case, including the testimony of GAI's expert, Mr. Ron Anfuso. Per the Court's order, neither the individual Plaintiffs nor Anfuso may testify to any facts, opinions, or foundation that is beyond the four corners of their respective declarations. GAI has no other witnesses for trial.

Either for want of direction from counsel or lack of expertise, Anfuso ignored critical data by failing to "audit or review" the books and records. (Anfuso Decl. p. 5 ln. 5.) This error in judgment was compounded by his failure to apply accepted accounting principles to any aspect of his analysis, and his failure to apply the terms of the Asset Purchase Agreement ("APA") in calculating the GAI's profit share. For these reasons, as set forth in detail in Defendants' *Daubert* Motion, Defendants have moved to exclude Anfuso's testimony from consideration.

However, if--for the moment--the Court sets aside the *Daubert* challenge, and blindly accepts all of Anfuso's eight opinions, each of

**DEFENDANTS' MOTION FOR DIRECTED VERDICT PURSANT TO F.R.C.P. 50(a)**
KYL_LB1495037

which calls for a reduction in YSN's Overhead, a Directed Verdict is <u>still</u> appropriate. Even if we disregard the lack of foundation for Anfuso's Overhead cost reductions, and use Anfuso's numbers as he states them, as long as the APA's formula for determining Paint Ball Profits and GAI's 20% profit share is applied, it turns out that YSN still overpaid GAI.

Section 1.5.3 of the APA provides that the Plaintiffs' Profit Share is to be determined in the following manner:[1]

> For Purposes of this section, "Profits of the Paint Ball Division" shall be defined as the gross revenue from all sources relating to products sold for use playing Paint Ball . . .
>
> <u>Less</u> the direct costs of manufacturing those products;
>
> <u>Less</u> any salaries payable to employees working specifically for the paint ball division;
>
> <u>Less</u> lease expenses directly relating to the Paint Ball Division;
>
> <u>Less</u> the Paint Ball Overhead Expense of YSN.[2]

---

[1] In Plaintiffs original Complaint they admit that this is the manner in which determination of the profit share is to be determined. (Page 3, paragraph 11.) "[A]dmissions in pleadings are generally binding on the parties and the Court." *American Title Ins. Co. v. v. Lacelaw, Corp.*, 861 F.2d 224, 226 (9th Cir.1988). "Judicial admissions are formal admissions in the pleadings which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact." *In re Fordson Engineering Corp.*, 25 B.R. 506, 509 (Bankr.E.D.Mich.1982). Factual assertions in pleadings and pretrial orders, unless amended, are considered judicial admissions conclusively binding on the party who made them. See *White v. Arco/Polymers, Inc.*, 720 F.2d 1391, 1396 (5th Cir.1983); *Fordson*, 25 B.R. at 509.

**DEFENDANTS' MOTION FOR DIRECTED VERDICT PURSANT TO F.R.C.P. 50(a)**
KYL_LB1495037

The APA requires a deduction of 100% of the salaries payable to employees working specifically for the paint ball division.[3] (§1.5.3. & *supra* note 1.) However, Anfuso's calculation, as found on exhibit B-4[4] of his declaration, reveals that he did not deduct the "salaries payable to employees working specifically for the paint ball division", as required by the APA, instead he included them as part of YSN's Overhead. The salary expense is <u>not</u> part of the Overhead for which GAI owes a share, it is a 100% direct deduction from the amount of the GAI's profit share. That is what the APA requires. It remains *undisputed* that the base salaries of the Paint Ball Division employees (including the salaries of the three Plaintiffs and their three sons all of whom worked only in Paint Ball Division) were at least $ 1,206,633.[5]

Similarly, the APA requires a deduction of 100% of the lease expense directly relating to the paint ball division. (§1.5.3. & *supra* note 1.) However Anfuso's calculation, as found on Exhibit B-4 of his declaration, reveals that he did not deduct the "lease expenses directly relating to the paint ball division", as required by the APA, instead he

---

[2] The expenses items that Anfuso adjusts in his "expert" declaration are his reductions to the Overhead Expenses for (1) Donations and Gifts; (2) Education and Tuition; (3) Entertainment: (4) Office Supplies and Expenses; (5) Sample Expenses; (6) Shipping; Travel & Lodging; and (8) Bank Charges. The remainder of the numbers including (i) Salaries of employees working specifically for the Paint Ball Division and (ii) lease expenses directly relating to the Paint Ball Division are undisputed.

[3] This calculation from the APA is not in dispute. Plaintiff admit in their answer to the Cross Complaint that the parties were "instructed to deduct salaries payable to employees working specifically for the paintball division as well as lease expenses directly related to the Paint Ball division." (Dkt. 72 ¶11).

[4] Mr. Anfuso's Exhibit B-4 can be found at Dkt. 89-1 p. 18.

[5] Anfuso Exhibit B-5, pages 25, 26, 27. As a matter of accounting principles, salaries would also include workers compensation and other incidentals.

**DEFENDANTS' MOTION FOR DIRECTED VERDICT PURSANT TO F.R.C.P. 50(a)**
KYL_LB1495037

included these lease cost of the Illinois warehouse where the Plaintiffs worked and which was used solely for Paintball. Here again, the lease expense relating to the Paint Ball Division is not part of the Overhead for which GAI owes a percentage, it is a 100% direct deduction from the amount of GAI's profit share.

The Chart below shows the calculation if one simply applies the agreed upon numbers for Gross Sales, Cost of Manufacture, Salaries, Leases, and the allocation portion of YSN's Overhead – including Anfuso's arbitrarily reduced Overhead amounts as set forth in his declaration. In the charts, the Paintball Salaries and Paintball Lease Expenses have been removed from YSN's Overhead to avoid doubling counting them as part of the Overhead and again as a 100% deduction from the Paintball revenues per the terms of the APA. Under the most gracious of calculations -- using Anfuso's numbers and his adjustments to the Overhead – GAI was <u>still</u> overpaid by $ 146,284. Accordingly, GAI cannot prevail on its asserting that it is owed money under the APA.

If one corrects Anfuso's accounting error under the APA, his "20% Profit Sharing Calculation", Exhibit B-4, would look like the following:

| | | |
|---|---|---|
| Sales | $13,639,129.92 | Unchanged |
| Cost of Goods Sold | ($9,876,892.46) | Unchanged |
| Gross Profit | $3,738,087.98 | Unchanged |
| | | |
| *Less Salary & Lease* *Expenses of Paintball* | *$1,684,165* | *New*[6] |

---

[6] This is the amount that Anfuso included in Overhead that should have been directly deducted from the gross profit, per § 1.5.3 of the APA.

**DEFENDANTS' MOTION FOR DIRECTED VERDICT PURSANT TO F.R.C.P. 50(a)**
KYL_LB1495037

| | | |
|---|---|---|
| Anfuso's Overhead (less Salary & Lease) | $11,085,224 | Reduced[7] |
| 18 % Overhead Allocation | $2,020,836 | Reduced |
| Net Profit -- | $33,088 | |
| 20% Profit Share | **$6,617**[8] | |

Per the terms of the APA, gross revenue, less the direct costs of manufacture, <u>less</u> any salaries payable to employees working for Paintball, <u>less</u> lease expenses directing relating to Paintball, less the Paintball Overhead Expense = $33,088, which is the Profits of the Paint Ball Division. GAI was entitled to 20% of that amount = $6,617, but received $152,901[9].

Anfuso correctly determined the amount of the Guerrilla Air direct expenses, $1,684,165, in Exhibit B-5[10]. He simply misapplied it when he

---

[7] Because Anfuso incorrectly added the $1,684,165 as part of the Overhead, it needed to be backed out so as to avoid double counting 18% of it.

[8] See Attached Declaration of Hank Kahrs in support of the accounting set forth herein. Previously filed as Exhibit "A" to Defendants' *Daubert* Motion. Mr. Kahrs made one minor edit to his chart in naming the final box to avoid any confusion over the final numbers and to make it clear that GAI was overpaid by $146,284.

[9] $152,901 is the aggregate amount that Plaintiffs state they received in profit-share from YSN and is confirmed in Mr. Anfuso Exhibit B-1, which can be found at Dkt. 89-1 p. 8.

[10] Anfuso's opinions regarding the Overhead expenses was based on his blind acceptance of several of the claims made by the Plaintiffs in their declarations. However, he did not accept all of his client's claims. In this brief we have applied all of Anfuso's opinions with respect to reductions to the Overhead.

**DEFENDANTS' MOTION FOR DIRECTED VERDICT PURSANT TO F.R.C.P. 50(a)**
KYL_LB1495037

created Exhibit B-4.[11]  In so doing, he failed to follow the APA's formula for determining the profit of the Paint Ball Division.  Irrespective of all of the analytical and foundational problems with Anfuso's opinions, if the Court simply applies the salaries and lease expenses in the manner required by §1.5.3. of the APA, the inescapable conclusion is that GAI cannot recover on its claim because it was overpaid.  How much it was overpaid is irrelevant to the GAI's action and is only relevant to the Cross-Complaint.

## II.

## THE PLAINTIFFS' ARE ESTOPPED FROM CREATING NEW NUMBERS AND NEW CALCULATIONS

The Plaintiffs cannot now alter Anfuso's report or his calculations. The Court's Order made it abundantly clear that the declarations would be the testimony of the witnesses.[12]  Moreover, in the interest of justice, the doctrine of estoppel "prevents a party from assuming inconsistent positions to the detriment of another party." *U.S. v. Georgia-Pacific Co.*,

---

[11] In Plaintiffs' Answer to the Cross Complaint, paragraph 11, Plaintiffs acknowledge that 'in calculating the "Profits of the Paintball Division" the parties were instructed to deduct salaries payable employees working specifically for the paintball division as well as lease expenses directly related to the paintball division." (Dkt. 72 ¶11).

[12] "The Court further orders the parties to file witness declarations no later than 3:00 p.m. on Tuesday, April 10, 2012, for every witness that they intend to call at trial and whom are under their respective control. These declarations shall set forth, in detail: (1) ALL testimony that these witnesses intend to offer at trial (with respect to issues that have not been bifurcated by the Court); and (2) the evidentiary *foundation* for the witnesses' testimony. Any exhibits referenced by a witness shall be attached to the declaration (and must also be supported by an adequate foundation). Any testimony that is not included in these declarations will be excluded at trial."

**DEFENDANTS' MOTION FOR DIRECTED VERDICT PURSANT TO F.R.C.P. 50(a)**
KYL_LB1495037

421 F.2d 92, 96 (9th Cir. 1970); *see Heckler v. Community Health Services*, 467 U.S. 51, 59 (1984).

## III.

## THE COURT CAN ENTER JUDGMENT FOR YSN BASED ON THE FACT THAT EVEN IF GAI'S EXPERTS' NUMBERS ARE APPLIED TO THE CONTRACT THE PLAINTIFFS WERE OVER PAID BY YSN

A motion for judgment as a matter of law is proper "...if, under the governing law, there can be but one reasonable conclusion as to the verdict. In other words, the motion should be granted if 'there is no legally sufficient basis for a reasonable jury to find for that party on the issue.'" *Winarto v. Toshiba America Electronics Components Inc.,* 274 F.3d 1276, 1283 (9th Cir. 2001) (quoting Fed. R. Civ. P. 50(a)(1)); see *also Forrett v. Richardson*, 112 F.3d 416, 419 (9th Cir. 1997), *cert. denied* 523 U.S. 1049, 118 S.Ct. 1366, 140 L.Ed.2d 515 (1998).

The court deciding a Rule 50 motion must apply the substantive evidentiary burden of proof that applies to the non-moving party's claims at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986); *see also Rajala v. Allied Corp.,* 919 F.2d 610, 615 (10th Cir. 1990). In this case it is the Plaintiffs' burden to prove that they were underpaid under the terms of the APA. Even if the Court were to accept GAI's experts' opinions, GAI cannot meet its burden. The extent to which GAI was overpaid is a question for another day, the current issue is simply GAI's claim that it is entitled to more

**DEFENDANTS' MOTION FOR DIRECTED VERDICT PURSANT TO F.R.C.P. 50(a)**
KYL_LB1495037

profits under the terms of the APA. That claim fails as a matter of their own evidence.

A trial court granting a pre-verdict motion for judgment is not required to draw any special inferences in the plaintiff's favor. *Ritchie v. U.S.*, 451 F.3d 1019 (9th Cir. 2006); *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554-55 (1990). Moreover, the court is not required to make findings of fact and conclusions of law justifying or explaining its action. *Weir v. Chicago Plastering Inst.*, 272 F.2d 883, 888 (7th Cir. 1959) ("Findings of fact are not required on the granting of a motion for directed verdict"); *see also Garrison v. Jervis B. Webb Co.*, 583 F.2d 258, 261 n.3 (6th Cir. 1978) (formal findings of fact and conclusions of law not required in connection with motion for directed verdict).

Because the Plaintiffs have been fully heard on GAI's breach of contract claim, through the submittal of declarations, and there is no basis upon which a jury could find that money is owed to GAI, even based on GAI's own expert's numbers, judgment in favor of YSN is appropriate.

Dated: April 15, 2012

_____
R. Greenberg
KEESAL, YOUNG & LOGAN

CHAIM J. WOOLF
LAW OFFICES OF CHAIM J. WOOLF

Attorneys for Defendants
YSN IMPORTS, INC., SAM NEWMAN & ISRAEL SCHOCHET

**DEFENDANTS' MOTION FOR DIRECTED VERDICT PURSANT TO F.R.C.P. 50(a)**
KYL_LB1495037

# EXHIBIT A

Case 2:11-cv-07413-SVW-RZ   Document 108   Filed 04/16/12   Page 10 of 18   Page ID #:5387

LAW OFFICES OF CHAIM J. WOOLF
Chaim J. Woolf (State Bar No. 236957)
Ronan Cohen (SBN 167476)
2029 Century Park East, Ste 1400
Los Angeles, California 90067
Tel: (310) 867-2729
Fax: (310) 919-3037
E-Mail: chaim@woolflawyer.com

MARC R. GREENBERG, CASB No. 123115
marc.greenberg@kyl.com
KEESAL, YOUNG & LOGAN
A Professional Corporation
400 Oceangate, P.O. Box 1730
Long Beach, California  90801-1730
Telephone:    (562) 436-2000
Facsimile:    (562) 436-7416

Attorneys for Defendants,
YSN IMPORTS, INC., SAM NEWMAN &
ISRAEL SCHOCHET

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GUERRILLA AIR, INC., DEBORAH TERAMANI, DAN COLBY, AND MARY COLBY,<br><br>Plaintiffs,<br><br>v.<br><br>YSN IMPORTS, INC., SAM NEWMAN & ISRAEL SCHOCHET,<br><br>Defendants. | CASE NO. 2:11-CV-07413-SVW-RZ<br><br>[ASSIGNED TO THE HON. JUDGE STEPHEN V. WILSON]<br><br>DECLARATION OF HANK KAHRS |

1

I, HANK KAHRS, declare as follows:

I have reviewed the expert's report submitted by Ronald Anfuso, CPA. His opinions are as follows:

1. Account 610150 – Education Tuition Fees: I have eliminated 100% of this category total from the amount allocated to Guerrilla Air, based on my inspection of the records and assuming these charges are all personal expenses of the Defendants. This is an adjustment of $120,819.90.

2. Account 610160 – Entertainment: I have eliminated 85% of this category total from the amounts allocated to Guerrilla Air, based on my inspection of the records and assuming 85% of these charges are personal expenses of the Defendants. This is an adjustment of $113,665.14.

3. Account 610290 – Office Supplies & Expenses: I have eliminated 87.6% of this category total from the amounts allocated to Guerrilla Air, based on the experience of the Plaintiffs that $2,000 a month is a reasonable and ordinary amount of Office Supplies and Expenses. This is an adjustment of $708,711.76.

4. Account 610460 – Sample Expense: I have eliminated 100% of this category total from the amount allocated to Guerrilla Air, based on the fact that the Plaintiffs were already charged for sample expenses that were specific to Guerrilla Air. This is an adjustment of $113,601.90.

5. Account 610480 – Shipping: I have eliminated 100% of this category total from the amounts allocated to Guerrilla Air, based on the fact that the Plaintiffs were already charged for shipping expenses

that were specific to Guerrilla Air. This is an adjustment of $1,240,212.88.

6. Account 610510 – Travel & Lodging: I have eliminated 72.4% of this category total from the amounts allocated to Guerrilla Air, based on the experience of the Plaintiffs that $5,000 per month is a reasonable and ordinary amount of Travel & Lodging. This is an adjustment of $663,341.64.

7. Account 710005 – Bank Charges: I have eliminated 25% of this category total from the amounts allocated to Guerrilla Air. This is an adjustment of $174,551.69.

8. RGL believes Mr. Anfuso's adjustments are not proper because i) he has unreliably applied his methodologies and ii) he has merely regurgitated many assumptions spoon fed to him by the plaintiffs with no further analysis, making his conclusions not relevant nor helpful to potential triers of fact. Typically an inspection of records by a CPA to determine if expenses are personal would involve reviewing the actual source documents or general ledger entries and identifying specific expenses that are clearly personal or questionable. Simply making an assumption not tied to the facts of this specific case is an unreliable application of accepted methodologies In addition, while it is appropriate for Mr. Anfuso to consider the plaintiffs' representations, it is not a reliable application of industry accepted methodology to simply accept these representations at face value without collaborating them with facts of the case. For example, it is not uncommon for a company to have education, entertainment, office supplies, samples, shipping travel & lodging and bank charges and Mr. Anfuso offers no explanation or

facts to collaborate his assumptions. Rather than perform the proper principles and methods to test these theories, Mr. Anfuso has chosen to indiscriminately make assumptions not based on the facts of this case or rely on the plaintiffs' opinions as to what is reasonable and, therefore, has failed to account for the alternative explanations for the expenses he excludes.

9. In the cases in which he relied on the plaintiffs, he has not even offered his own opinion as justification for such blind acceptance of the plaintiffs' biased opinions. In the other instances he made assumptions himself without any explanation and without tying them to the specific facts of this case.

10. In all cases he has not applied any scientific, technical or other specialized knowledge required to make an expert's opinions reliable in a court of law or any venue. Further, in not reviewing the actual source documents and relating his opinions to specific charges he has not based his opinions on sufficient facts or data and has made his opinions irrelevant to this case. There are standard procedures available to assist an expert in determining whether an expense category is reasonable.

11. These techniques include, but are not limited to: reviewing historical data from Guerilla Air and comparing the allocation to YSN; reviewing industry standards and comparing the allocations to the norm in the industry; performing trend analysis within the expense categories; and looking at the specific source documents to determine that the expense was unrelated to Guerilla Air. Instead Mr. Anfuso's testimony is not the product of reliable principles

and methods used in the industry, and as a result he did not reliably apply these principles to the facts of the case. Further, we note that there is no language in the APA that would allow Guerilla Air to deduct any expenses from the overhead calculations. This is yet another example of Mr. Anfuso's inability to tie his opinion sufficiently to the facts of this case, which involves a specific and defined contractual obligation.

12. Additionally, Mr. Anfuso did not even deduct the salaries of the employees as a direct expense. It is quite common and appropriate for a company to have both direct expenses and overhead expenses needing to be allocated for the same expense items. For example, Mr. Anfuso offers no explanation or facts to justify the exclusion of overhead shipping expenses other than the fact that there were also direct shipping expenses. The fact that some shipping expenses were direct does not by itself mean that there were not also appropriate overhead shipping expenses allocated to Guerilla Air. To compound these issues, Mr. Anfuso has taken the faulty data and extended it out 20 years. As such, we believe none of his opinions are reliable, relevant or helpful.

13. Further, Mr. Anfuso made a direct calculation error. This is found when comparing his Schedules B-4 and B-5. On B-5 he allocated expenses in accordance with the APA, in that the direct expenses for Guerilla Air were allocated at 100% to Guerilla Air, and YSN's overhead was allocated at 18.23% of the total. When Mr. Anfuso carries the numbers forward to his Schedule B-4, he does NOT allocate the Guerilla Air expenses to Guerilla Air per the APA, he allocates 18%

DECLARATION OF HANK KAHRS

1 | (not the 18.23% he calculated) of the TOTAL overhead, thereby
2 | allocating only 18% of Guerrilla Air Expenses to Guerilla Air.

3 |     14. We have restated Mr. Anfuso's Schedule B-4 and have
4 | attached it to this declaration. As one can see, the corrected column of
5 | Guerilla Air profit of $2,053,923 ties directly to Mr. Anfuso's Schedule
6 | B-5. If you believe the rest of Mr. Anfuso's analysis is correct, which as
7 | noted above, we do not, the $3,579,821 should be deducted from YSN's
8 | overhead of $14,665,044, resulting in an allocation base of $11,085,224.
9 | Multiplying this by Mr. Anfuso's 18.23% results in am allocation of
10 | $2,020,836. When this is deducted from Mr. Anfuso's profit, the result
11 | is $33,087.

12 |     15. Applying the 20% profit percentage results in profit
13 | due the plaintiff's of $6,617. The Past Damages Offset used by Mr.
14 | Anfuso of $152,901 is then deducted, therefore, using Mr. Anfuso's own
15 | calculations and theory the Plaintiff's would owe the defendants
16 | $146,284 PLUS pre-judgment interest at 10%.
17 | ///

DECLARATION OF HANK KAHRS

16. We further note that the entire future lost profits calculation is based on the wrong monthly amount, it should be $132 per month, not $5,758 per month. Again, using Mr. Anfuso's analysis and extending it for 20 years, the Plaintiff's would still owe the defendants money. Moreover, there is absolutely no basis upon which to project alleged past calculation errors into the future.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 13th day of April, 2012, at _____, Orange, Ca _____.

_____
HANK KAHRS

---

7

DECLARATION OF HANK KAHRS

*Colby vs. YSN*

## SUMMARY OF SCHEDULE B-4 PER ANFUSO'S DECLARATION

| Description | Reference | Per Anfuso's Claim | |
|---|---|---|---|
| | | Per B-4 | As Corrected |
| Sales As Reported | B-5 | $ 13,639,130 | $ 13,639,130 |
| Less Allowances & Return | B-5 | 24,149 | 24,149 |
| Net Sales | | 13,614,980 | 13,614,980 |
| Cost of Goods Sold As Reported | B-5 | 9,876,892 | 9,876,892 |
| Gross Profit As Reported | B-5 | 3,738,088 | 3,738,088 |
| *Less Guerilla Direct Expenses (A)* | B-5 | - | 1,684,165 |
| Net Operating Profit | B-5 | 3,738,088 | 2,053,923 |
| Overhead Expenses | | | |
| Overhead as Reported | B-5 | 16,349,209 | - |
| YSN Overhead as Reported | B-5 | - | 14,665,044 |
| Less: Claimed Inappropriate Charges | B-5 | (3,579,821) | (3,579,821) |
| Revised Overhead Expenses | | 12,769,388 | 11,085,224 |
| 18% Overhead Allocation to Guerrilla Air | | 2,298,490 | 2,020,836 |
| Net Profit - As Revised | | $ 1,439,598 | $ 33,087 |
| 20% Profit Share - As Revised | | $ 287,920 | $ 6,617 |
| Offset Per Anfuso (On Schedule B-2) | B-2 | $ 152,901 | $ 152,901 |
| Payments Owed | | $ 135,018 | $ (146,284) |

NOTE:
(A) These were properly alloacted per the APA by Mr. Anfuso on Schedule B-5, but not carried forward correctly to Schedule B-4. The amount was incorrectly added as part of Overhead rather than deducted in the manner set forth in Sec. 1.5.3 of the APA.
The amounts in ( ) are negative.
The Guerilla Direct Expenses include salaries, rent and other direct expenses.